UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILBERT ALEXANDER ANAYA MURCIA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ELIZABETH GODFREY, et al.,<br><br>　　　　　　　　Defendants. | CASE NO. C19-587-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Wilbert Anaya Murcia, a native and citizen of El Salvador who was lawfully removed from the United States to El Salvador in June 2017, brings this action to obtain a court order requiring the Government to facilitate and pay for his return to the United States so that he can participate in his pending immigration proceedings. *See* Dkt. 1. Currently before the Court are the Government's motion to dismiss for lack of subject matter jurisdiction or, alternatively, for failure to state a claim, Dkt. 9, and Mr. Anaya Murcia's motion for summary judgment, Dkt. 20. As discussed below, the Court concludes that it does not have jurisdiction over this action and therefore recommends that the Government's motion to dismiss be **GRANTED** and Mr. Anaya Murcia's motion for summary judgment be **DENIED** as moot.

REPORT AND RECOMMENDATION - 1

# BACKGROUND

Mr. Anaya Murcia arrived in the United States as a 14-year-old unaccompanied minor in May 2012. Dkt. 1 at ¶ 10. Upon his arrival, he was placed into removal proceedings and detained in the custody of the Office of Refugee Resettlement in San Antonio, Texas. *Id.* at ¶ 11. In August 2012, he was released into the custody of his mother, who lived in Seattle. *Id.* at ¶ 12. In November 2016, the Seattle Immigration Court ordered him removed *in abstentia*. *Id.* at ¶ 16.

When Mr. Anaya Murcia learned that he had been ordered removed, he timely filed a motion to reopen his removal proceedings and rescind his *in abstentia* order so that he would have an opportunity to apply for asylum, withholding of removal, and relief under the Convention Against Torture. *Id.* at ¶¶ 16-18. After he filed the motion to reopen, the Government took him into custody. *Id.* at ¶ 19. On March 13, 2017, an immigration judge ("IJ") denied his motion to reopen, and he filed a timely notice of appeal to the Board of Immigration Appeals ("BIA"). *Id.* at ¶ 20. In June 2017, while his appeal was pending, the Government removed him to El Salvador.[1] *Id.* at ¶ 21. He has been living in hiding and fears persecution. *Id.* at ¶ 49.

On April 13, 2018, the BIA granted Mr. Anaya Murcia's appeal, vacated the *in abstentia* order, and remanded his case to the immigration court for further proceedings. *Id.* at ¶ 22. The immigration court scheduled a master calendar hearing for August 1, 2018. *Id.* at ¶ 23. The court ultimately rescheduled his master calendar hearing for August 29, 2019, and then granted an additional extension of time to November 7, 2019, to allow time for this action to proceed. *Id.* at ¶ 24; Dkt. 22. Prior to the August 1, 2018 hearing, Mr. Anaya Murcia retained the Northwest Immigrant Rights Project to represent him in his removal proceedings. Dkt. 1 at ¶ 23. His

---

[1] Mr. Anaya Murcia does not dispute that the Government lawfully removed him. *See* Dkt. 18 at 6.

REPORT AND RECOMMENDATION - 2

counsel made numerous efforts to obtain ICE's agreement to facilitate his return to the United States but was unsuccessful. *Id.* at ¶¶ 25-29.  The U.S. Department of Homeland Security ("DHS") then moved to dismiss his immigration proceedings, and he filed a motion for issuance of a subpoena requiring his presence for his removal hearing. *Id.* at ¶ 31.  On November 15, 2018, the IJ denied the Government's motion and granted Mr. Anaya Murcia's motion, noting that he "can seek an order through a United States District Court to enforce a subpoena." *Id.* at ¶ 33; *see also* Dkt. 13-3 at 5-6 (citing *Grace v. Sessions*, No. 18-1853, 2018 WL 3812445, at *2-*4 (D.D.C. Aug. 9, 2018)).  The IJ issued a subpoena ordering Mr. Anaya Murcia to appear and "give testimony in connection with the removal proceedings . . . relating to you . . . concerning your asylum application, testimony, and presentation of evidence." Dkt. 13-3 at 3.  The subpoena did not order DHS to take any action to facilitate Mr. Anaya Murcia's return. *See id.* Mr. Anaya Murcia's counsel subsequently reached out to ICE to request facilitation of his return, but ICE denied the request. Dkt. 1 at ¶¶ 34-35.

In April 2019, Mr. Anaya Murcia initiated the instant action.  In Count One, he alleges that the Government has violated the Immigration and Nationality Act ("INA"). *Id.* at ¶¶ 42-49.  Specifically, he alleges he had a statutory right to move to reopen—a right that survived his removal—and that the Government should not be allowed to undermine that right by preventing his return after he prevailed on his motion to reopen. *Id.* at ¶ 45.  He further alleges the Government's refusal to facilitate his return violates his rights under the INA to be present at his removal proceedings, present evidence on his behalf, cross-examine witnesses and the Government's evidence, and effectively communicate with his attorney and meaningfully participate in his defense. *Id.* at ¶¶ 46-49.

REPORT AND RECOMMENDATION - 3

In Count Two, Mr. Anaya Murcia alleges the Government has violated his rights under the Administrative Procedures Act ("APA"). *Id.* at ¶¶ 50-60. He alleges, "By obstructing Mr. Anaya Murcia's return to the United States to participate in removal proceedings, Defendants have acted arbitrarily and capriciously, and otherwise contrary to law in violation of the INA and 5 U.S.C. § 706." *Id.* at ¶ 51. He points to ICE Directive 11061.1 (Feb. 24, 2012), which explicitly provides for facilitation of return after success in a petition for review before a U.S. Court of Appeals where the individual's "presence is necessary" for the continuation of removal proceedings. *Id.* at ¶ 55. He claims that his case would fall within the ICE Directive if he had prevailed before the Ninth Circuit, instead of the BIA, and that there is no meaningful basis to distinguish the different procedural postures. *Id.* at ¶ 56.

In Count Three, Mr. Anaya Murcia alleges the Government has violated his Fifth Amendment due process rights. *Id.* at ¶¶ 61-67. He alleges the right to be present at one's own removal proceeding is fundamental to due process, and the fact the Government is preventing him from being present hinders his ability to testify, present witnesses and evidence, consult with his attorneys, and cross-examine the Government's witnesses and evidence. *Id.* at ¶ 63. He thus argues the Government is depriving him of a fundamentally fair hearing in violation of due process. *Id.* at ¶ 67.

In Count Four, Mr. Anaya Murcia alleges a violation of the Mandamus Act. *Id.* at ¶¶ 68-73. He alleges that the Government has "a ministerial, nondiscretionary obligation to fairly administer removal proceedings against Mr. Anaya Murcia, and therefore to allow Plaintiff to participate in his removal proceedings and access counsel where he has prevailed on a timely filed appeal that is binding on Defendants." *Id.* at ¶ 71. He also alleges the Government has a duty to comply with orders issued by the immigration courts or BIA that are binding upon it,

REPORT AND RECOMMENDATION - 4

including the BIA's order vacating his *in abstentia* removal order and the IJ's order requiring him to appear for his removal proceedings. *Id.* at ¶ 72. He maintains the Government's refusal to facilitate his return entitles him to mandamus relief. *See id.* at ¶¶ 68-73.

Finally, in Count Five, Mr. Anaya Murcia alleges a violation of the All Writs Act. *Id.* at ¶¶ 74-76. He asserts, "If this Court finds that there is no other vehicle for providing relief to Plaintiff for Defendants' violations to Mr. Anaya Murcia, the Court may still grant relief through the All Writs Act as deemed necessary and proper to ensure that Mr. Anaya Murcia can attend and fully participate in his removal proceedings, as is his right having prevailed on his motion to reopen." *Id.* at ¶ 76.

As relief, he asks the Court to assume jurisdiction over the matter; declare that the Government's refusal to facilitate his return violates the INA, the APA, and the Fifth Amendment's Due Process Clause; order the Government to immediately facilitate his return to the United States, including paying for the expenses of his return flight; enjoin the Government from preventing him from being present at and participating in his removal proceedings and meaningfully accessing his counsel; and award reasonable attorneys' fees and costs. *Id.* at 21.

On July 26, 2019, the Government moved to dismiss, arguing that the Court does not have jurisdiction over Mr. Anaya Murcia's claims or, alternatively, Mr. Anaya Murcia fails to state a claim upon which relief may be granted. Dkt. 9. On July 30, 2019, Mr. Anaya Murcia filed a motion for a temporary restraining order, which the Court denied without prejudice because Mr. Anaya Murcia had not established a likelihood of irreparable harm. Dkts. 12, 17. On August 22, 2019, Mr. Anaya Murcia filed a motion for summary judgment. Dkt. 20. The motions have been fully briefed and are ripe for consideration.

REPORT AND RECOMMENDATION - 5

## DISCUSSION

The Government argues that the Court does not have jurisdiction to consider Mr. Anaya Murcia's claims. Because the Court agrees, it does not consider the Government's alternative argument that Mr. Anaya Murcia fails to state a claim or Mr. Anaya Murcia's motion for summary judgment.

### A.   Legal standard

Under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction is either facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Government mounts a facial attack, in which "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The Court accepts the factual allegations in the complaint as true, and the nonmoving party is entitled to have those facts construed in the light most favorable to it. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). As the party asserting a claim in federal court, Mr. Anaya Murcia bears the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B.   Jurisdiction channeling provisions of the INA

Two provisions of the INA, as amended by the REAL ID Act of 2005, are relevant to the Government's jurisdictional challenge. Section 1252(a)(5), titled "Exclusive means of review," provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, *a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal* entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus

review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5) (emphasis added); *see Martinez-Rosas v. Gonzales*, 424 F.3d 926, 928-29 (9th Cir. 2005). Section 1252(b)(9), titled "Consolidation of questions for judicial review," provides:

> *Judicial review of all questions of law and fact*, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section.* Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphases added).[2] Courts have described § 1252(b)(9) as a "zipper" clause because it consolidates judicial review to the courts of appeals. *See, e.g.*, *Reno v. Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483 (1999) ("*AADC*"). "Through this section, 'Congress made clear that review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding.'" *A. Singh v. Gonzales*, 499 F.3d 969, 976 (9th Cir. 2007) (quoting H.R. Rep. No. 109-72, at 173, 2005 U.S.C.C.A.N. 240, 298). The Ninth Circuit has noted that § 1252(b)(9) is "'breathtaking' in scope and 'vise-like' in grip and therefore swallows up virtually all claims that are tied to removal proceedings." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (quoting *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007)). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review]

---

[2] The first sentence of § 1252(b)(9) was added by § 306 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). The second sentence was added by the REAL ID Act. *A. Singh v. Gonzales*, 499 F.3d 969, 977-78 (9th Cir. 2007).

REPORT AND RECOMMENDATION - 7

process." *Id.* (emphases in original).  Thus, even "claims that indirectly challenge a removal order" must be channeled through the courts of appeals.  *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012).  "When a claim by [a noncitizen], however it is framed, challenges the procedure and substance of an agency determination that is *inextricably linked* to the order of removal, [a district court's review of the claim] is prohibited . . . ."  *Id.* at 623 (internal citation and quotation marks omitted, emphasis added).

There are, however, limits on the scope of § 1252(b)(9).  The REAL ID Act was not intended to preclude district court review of "challenges to detention that are independent of challenges to removal orders."  *V. Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (quoted source omitted); *see also J.E.F.M.*, 837 F.3d at 1032.  For example, the Ninth Circuit has held that federal district courts may consider collateral legal challenges to the government's detention authority, as well as ineffective assistance of counsel claims arising from an attorney's failure to timely file a petition for review.  *J.E.F.M.*, 837 F.3d at 1032 (citing *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006), and *V. Singh*, 638 F.3d at 980); *see also Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (holding that § 1252(b)(9) did not preclude jurisdiction over challenge to prolonged detention).[3]

Justice Alito, writing for a plurality of the Supreme Court, recently addressed the scope of § 1252(b)(9).  *Jennings*, 138 S. Ct. at 839-41.  The applicability of the statute, he wrote, turns on whether the legal questions that the court must decide arise from the actions taken to remove the noncitizen.  *Id.* at 840.  He rejected an "expansive interpretation" of § 1252(b)(9) that would

---

[3] *Jennings* was a fragmented decision.  Justice Alito, joined by Justices Roberts and Kennedy, wrote for the plurality and concluded that § 1252(b)(9) did not preclude jurisdiction.  Justice Thomas, joined by Justice Gorsuch, concurred in the ultimate decision but would have found that the Court did not have jurisdiction.  Justice Breyer, joined by Justices Ginsburg and Sotomayor, agreed with Justice Alito that the Court had jurisdiction, disagreed as to Justice Alito's discussion of the scope of § 1252(b)(9), and dissented in the ultimate decision.  Justice Kagan did not participate in the case.

REPORT AND RECOMMENDATION - 8

1 encompass challenges to the length of immigration detention, conditions of confinement claims
2 related to immigration detention, state-law assault claims against a guard or fellow detainee, or
3 personal injury actions stemming from a motor vehicle accident that occurred while an
4 immigration detainee was being transferred to a different location. *Id.* He observed that such an
5 extreme interpretation of § 1252(b)(9) would make prolonged detention claims effectively
6 unreviewable because by the time a final order of removal was entered, any excessive detention
7 would have already taken place. *Id.* Noting that the parties did not brief the scope of §
8 1252(b)(9) and it was unnecessary to provide a comprehensive interpretation, he explained that it
9 was sufficient that the noncitizens "are not asking for review of an order of removal; they are not
10 challenging the decision to detain them in the first place or to seek removal; and they are not
11 even challenging any part of the process by which their removability will be determined." *Id.* at
12 841.

**B.    Application of §§ 1252(a)(5) and 1252(b)(9) to Mr. Anaya Murcia's claims**

The Government argues that all of Mr. Anaya Murcia's claims "arise from" his pending removal proceedings, relying primarily on the Ninth Circuit's decision in *J.E.F.M.* Dkt. 9 at 8. In *J.E.F.M.*, nine minors in various stages of removal proceedings brought a putative class action asserting that they were statutorily and constitutionally entitled to have government-appointed attorneys in removal proceedings. *J.E.F.M. v. Holder*, 107 F. Supp. 3d 1119, 1123 (W.D. Wash. 2015). The district court concluded that §§ 1252(a)(5) and 1252(b)(9) precluded review of the plaintiffs' statutory claims but did not prevent the court from hearing the right-to-counsel claim alleging a Fifth Amendment due process violation. *Id.* at 1134.

The Ninth Circuit reversed, holding that the plaintiffs' right to counsel claims must be raised in petitions for review of their orders of removal because "§§ 1252(a)(5) and 1252(b)(9)

REPORT AND RECOMMENDATION - 9

channel review of all claims, including policies-and-practices challenges, through the [petition for review] process whenever they 'arise from' removal proceedings." *J.E.F.M.*, 837 F.3d at 1035. Because the plaintiffs' right-to-counsel claims "arose from" removal proceedings, *i.e.*, were bound up in and an inextricable part of the administrative process, the court determined that they could be raised only in a petition for review. *Id.* at 1032-33, 1035. The court also rejected the plaintiffs' argument that they would not be able to obtain judicial review of their constitutional claims, noting that "[r]ight-to-counsel claims are routinely raised in petitions for review filed with a federal court of appeals." *Id.* at 1033.

The Court agrees with the Government that §§ 1252(a)(5) and 1252(b)(9) channel Mr. Anaya Murcia's claims to the court of appeals. Justice Alito's opinion in *Jennings* indicates that the Court should begin by identifying the legal questions at issue. *See Jennings*, 138 S. Ct. at 840. Mr. Anaya Murcia's complaint raises at least the following legal questions, all of which are directly tied to his pending removal proceedings:

- If a person who has been lawfully removed prevails on a motion to reopen, is he or she entitled to be returned to the United States to participate in the reopened *removal proceedings*? In other words, does the right to file a motion to reopen and continue to seek relief from abroad include the right to be present at reopened *removal proceedings*?

- Is there a statutory right to be present at one's own *removal proceedings*?

- Do the INA's statutory safeguards to ensure fair *removal hearings*—the right to a reasonable opportunity to examine the evidence, present evidence of one's own, and cross-examine the government's witnesses—require that a noncitizen be present during his or her *removal proceedings*?

REPORT AND RECOMMENDATION - 10

- Does the Government violate Mr. Anaya Murcia's right to counsel under the INA when it prevents him from returning to the United States, thereby allegedly impeding his ability to effectively communicate with his attorney and meaningfully participate in his *removal proceedings*?

- Is the Government's refusal to facilitate Mr. Anaya Murcia's return for his *removal proceedings* under ICE Directive 11061.1 arbitrary and capricious in violation of the APA?

- Does due process in *removal proceedings* include the right to be present at one's own removal proceedings? Is there a due process violation where an individual is abroad and prevented from being physically present during *removal proceedings* such that he is substantially hindered in his ability to testify, present witnesses and evidence, consult with his attorneys, and cross-examine the government's witnesses and evidence?

- Under the Mandamus Act, does the Government have a ministerial, nondiscretionary obligation to allow Mr. Anaya Murcia to participate in person in his *removal proceedings* and access his counsel?

*See* Dkt. 1 at 11-20. All of Mr. Anaya Murcia's claims relate to his asserted right to be present during his removal hearing. As with the right-to-counsel claims in *J.E.F.M.*, Mr. Anaya Murcia's claims are bound up in the administrative process. However they are framed, they challenge decisions that are inextricably linked to the pending removal proceedings. Thus, his claims "arise from" actions taken to remove him and must be raised in a petition for review, not in this Court at this time.

REPORT AND RECOMMENDATION - 11

Mr. Anaya Murcia asserts several counterarguments.  First, he argues that *J.E.F.M.* is distinguishable.  Dkt. 18 at 4-6.  He points out that *J.E.F.M.* involved standard removal proceedings while he has prevailed on a motion to reopen.  He argues that this difference matters because he is claiming a failure to give effect to the statutory scheme governing motions to reopen, which is a collateral issue.  He claims that because his motion to reopen was granted, he is entitled to be placed back in the same status he had previously: physically present in the United States.  He also contends that the Government's refusal to return him to the United States is independent of any future challenge that may exist to a hypothetical order of removal.

Mr. Anaya Murcia's framing of the issue ignores the direct effect of prevailing on his motion to reopen: he is now back in removal proceedings.  He seeks to return to the United States so that he can participate in these removal proceedings, which are no different from the standard removal proceedings involved in *J.E.F.M.*  The grant of his motion to reopen and his current removal proceedings cannot be divorced.  If the Government continues to refuse to return him to the United States and he must pursue his removal proceedings from abroad, his challenge to those proceedings will be similar to the right-to-counsel claim in *J.E.F.M.* in that, "[b]y any realistic measure," any right to be present during removal proceedings is "part and parcel of the removal proceeding itself."  *J.E.F.M.*, 837 F.3d at 1033 (quoting *Aguilar*, 510 F.3d at 13 (alteration in *J.E.F.M.*)).  Thus, the Court is not persuaded that the difference in the procedural postures between this case and *J.E.F.M.* establishes that Mr. Anaya Murcia's claims are independent of removal proceedings.

Mr. Anaya Murcia also seeks to distinguish *J.E.F.M.* because that case involved unrepresented noncitizens, while he is represented by counsel.  Dkt. 18 at 8-10.  Mr. Anaya Murcia cites *Arroyo v. U.S. Department of Homeland Security*, No. 19-815, 2019 WL 2912848

(C.D. Cal. June 20, 2019). In *Arroyo*, detained noncitizens brought a putative class action to challenge ICE's decision to transfer them out of state, which they alleged would violate their right to counsel under the INA and the Fifth Amendment's Due Process Clause. *Id.* at *3 - *4. Some of the plaintiffs were represented, while others were not. *Id.* at *12. The court concluded that the claims of the unrepresented plaintiffs were indistinguishable from *J.E.F.M.* and therefore it lacked jurisdiction. *Id.* at *14. As to the represented plaintiffs, however, the court found that *J.E.F.M.* was distinguishable because it involved unrepresented parties. *Id.* at *13. The represented plaintiffs asserted that "an established attorney-client relationship carries with it certain rights separate from and additional to their rights in removal proceedings." *Id.* For purposes of jurisdiction, the court found, it was "enough" that the represented plaintiffs "asserted a harm which accrues at the moment of geographic separation, rather than in reference to the fairness of their underlying removal proceedings." *Id.* Mr. Anaya Murcia argues that he too has alleged that the Government's actions interfere with his established attorney-client relationship, and therefore his claims are collateral to the removal process. Dkt. 18 at 9 (citing Dkt. 1 at ¶ 49).

The Court declines to follow *Arroyo*. The decision is at odds with the three other analogous cases the Court has been able to identify. *See Aguilar*, 510 F.3d at 13 (holding that § 1252(b)(9) precluded district court jurisdiction over claim that detention and subsequent transfer by the government infringed the petitioners' "right to counsel by barring access to lawyers, interfering with preexisting attorney-client relationships, and making it difficult to secure counsel of their choosing"); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048-49 (N.D. Cal. 2018) (holding that court did not have jurisdiction over petitioners' claim that out-of-state transfers violated their right to counsel by destroying their established attorney-client relationships)[4];

---

[4] Mr. Anaya Murcia argues that the Court should not follow *Alvarez*, which the Government cites, because the decision "runs against the conclusions of several other courts that have exercised jurisdiction over challenges to

*Hernandez Culajay v. McAleenan*, --- F. Supp. 3d ----, 2019 WL 3889737, at *6 - *7 (E.D. Penn. Aug. 19, 2019) (same).  Moreover, Mr. Anaya Murcia's complaints regarding his access to counsel are directly tied to his removal proceedings and thus distinguishable from those of the plaintiffs' in *Arroyo*.  *See* Dkt. 1 at ¶ 49 (explaining that he hired counsel "to represent him in his removal proceedings," and complaining that his "inability to reenter the United States daily impedes his ability to effectively communicate with his attorney and to meaningfully participate in his defense" and "to communicate with counsel to prepare for his application for relief"); *see also Hernandez Culajay*, 2019 WL 3889737, at *6 ("Because the harm about which Plaintiffs complain is harm to the removal proceedings, their claims arise from their removal proceedings, and this Court lacks jurisdiction under Section 1252(b)(9).").

Next, Mr. Anaya Murcia argues that *Jennings* counsels against an expansive reading of § 1252(b)(9) and contends that he is not raising any of the types of claims Justice Alito identified as problematic, namely (1) asking for review of an order of removal, (2) challenging a decision to detain him in the first place or to seek removal, and (3) challenging "any part of the process by which [his] removability will be determined."  Dkt. 18 at 8 (quoting *Jennings*, 138 S. Ct. at 841); *see also id.* at 6.  But concluding that his claims "arise from" removal proceedings does not require the Court to rely on an overly expansive reading of § 1252(b)(9), as his claims are inextricably linked to his pending removal proceedings and clearly distinguishable from the detention, assault, and tort claims Justice Alito highlighted.  *See Jennings*, 138 S. Ct. at 840; *see also Alvarez*, 338 F. Supp. 3d at 1049 ("Here, the court need not employ an expansive

---

transfer decisions by DHS . . . ."  Dkt. 18 at 10.  But the cases Mr. Anaya Murcia cites are readily distinguishable as they involve claims related to family unity or do not discuss §§ 1252(a)(5) and 1252(b)(9).  *See Reyna v. Hott*, No. 17-1192, 2018 WL 3551558 (E.D. Va. Mar. 20, 2018) (addressing right to family unity); *Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019) (same); *Aguilar*, 510 F.3d at 20-21 (holding that right to counsel claims arose from removal, but family unity claims did not); *Palamaryuk ex rel. Palamaryuk v. Duke*, 306 F. Supp. 3d 1294 (W.D. Wash. 2018) (addressed claim under § 1252(a)(2)(B)(ii), not §§ 1252(a)(5) and 1252(b)(9)).

REPORT AND RECOMMENDATION - 14

interpretation of § 1252(b)(9)'s 'arising from' language to find that right-to-counsel claims, like those of Petitioners, fall squarely within the purview of the provision."); *Hernandez Culajay*, 2019 WL 3889737, at *6 - *7 (distinguishing plaintiffs' right-to-counsel claims from those Justice Alito identified as outside the scope of § 1252(b)(9)). Furthermore, the Court disagrees with Mr. Anaya Murcia's claim that he is not challenging "any part of the process by which [his] removability will be determined"; all his claims are directly related to his removal proceedings.

Mr. Anaya Murcia also argues that his claims are distinguishable from those in *Jennings* and *J.E.F.M.* because he will not be able to raise them in a petition for review. Dkt. 18 at 7-8. This is so, he argues, because the government previously moved to terminate his removal proceedings, the immigration court could continue his proceedings for years, he will be unable to obtain meaningful judicial review if he is forced to litigate from abroad because he will be unable to properly prepare his case, and his claims cannot be reviewed within the administrative proceedings. His arguments are unpersuasive. The IJ already denied the motion to terminate, so this is a non-issue. The claim of lengthy delays has no support in the record and appears to be wholly speculative. He has not provided support for his claim that he will be unable to obtain meaningful judicial review; if he is unable to participate in his removal proceedings in person, he may raise his statutory and constitutional challenges either during the administrative proceedings or in a petition for review, as the Ninth Circuit has explained:

> It is true that at present neither the immigration judge nor the Board of Immigration Appeals has authority to order court-appointed counsel. But the question at hand is a legal one involving constitutional rights. Even if not raised in the proceedings below, the court of appeals has authority to consider the issue because it falls within the narrow exception for "constitutional challenges that are not within the competence of administrative agencies to decide" and for arguments that are "so entirely foreclosed . . . that no remedies [are] available as of right" from the agency.

*J.E.F.M.*, 837 F.3d at 1038 (quoted sources omitted).

REPORT AND RECOMMENDATION - 15

Finally, Mr. Anaya Murcia argues that his claims are independent of his removal proceedings because they are analogous to habeas cases that challenge where and how the government is holding an individual. Dkt. 18 at 4-5. He argues, "Like in those cases—where a district court determines the validity of the government's restraints on an individual's liberty—Mr. Anaya Murcia seeks review of Defendants' restrictions on his movements and their failure to facilitate his presence at a court hearing." *Id.* at 4. The Court does not see the similarity. All the cases Mr. Anaya Murcia cites, *see id.* at 5, involve the legality of immigration detention, and such claims generally become moot once an individual has been removed. Mr. Anaya Murcia's claims are wholly distinguishable and directly tied to his pending removal proceedings. Accordingly, this Court does not have jurisdiction.

**CONCLUSION AND RIGHT TO OBJECT**

The Court recommends that the Government's motion to dismiss, Dkt. 9, be **GRANTED**, Mr. Anaya Murcia's motion for summary judgment, Dkt. 20, be **DENIED** as moot, and this action be **DISMISSED** without prejudice for lack of jurisdiction. A proposed order accompanies this Report and Recommendation.

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **October 24, 2019.** The Clerk should note the matter for **October 25, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on

the date the response is due.  Objections and responses shall not exceed 12 pages.  The failure to timely object may affect the right to appeal.

DATED this 10th day of October, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 17